# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| TECHSYS CHASSIS, INC. | § | |
| | § | |
| | § | |
| V. | § | CASE NO. 4:08-cv-203 |
| | § | (Judge Schneider/Judge Mazzant) |
| SULLAIR CORPORATION | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Pending before the Court are Defendant's Amended Partial Motion to Dismiss (Dkt. #20)[1] and Defendant's Supplemental Motion to Dismiss (Dkt. # 58)[2]. Having considered the relevant pleadings, the Court finds that the motions should be denied.

### BACKGROUND

Defendant sells industrial air compressor equipment. Plaintiff manufactures custom road-ready chassis for major manufacturers of large equipment. PL. 1ST AMD. COMPL. at ¶ 6. Beginning in August 2004, Plaintiff and Defendant entered into an agreement whereby Plaintiff agreed to design a custom chassis for Defendant's 1,600 cubic feet per minute ("CFM") blower. PL. 1ST AMD. COMPL. at ¶ 8-9. Plaintiff agreed to devote its time and labor to the design without immediate remuneration in exchange for Defendant's agreement to purchase its requirements from Plaintiff. PL. 1ST AMD. COMPL. at ¶ 9. In furtherance of these agreements, Defendant signed a non-disclosure

---

[1] Defendant's Amended Partial Motion to Dismiss addresses Plaintiff's First Amended Complaint.

[2] Defendant's Supplemental Motion to Dismiss addresses Plaintiff's Second Amended Complaint. The Court granted leave to file the Second Amended Complaint adding new claims without requiring the Defendant to re-file its amended motion to dismiss. The Court permitted Defendant to file a supplemental motion to dismiss.

agreement ("NDA") that restricts Defendant from using Plaintiff's design efforts to have another supplier manufacture the chassis. PL. 1ST AMD. COMPL. at ¶ 10.

Over about a three-year period, Plaintiff and Defendant exchanged design specifications, communicated via email and telephone, and traveled to each other's facilities as they worked together to design the 1,600 CFM chassis. Pl. 1st Amd. Compl. at ¶ 11-22. From January through March of 2005, Plaintiff underwent Defendant's quality programs to assure Defendant that Plaintiff's manufacturing abilities were to Defendant's standards. PL. 1ST AMD. COMPL. at ¶ 14.

In May 2005, Plaintiff discovered that Defendant was considering using another supplier for the 1,600 CFM chassis. PL. 1ST AMD. COMPL. at ¶ 15. Plaintiff immediately sent an email to Defendant reminding it of its contractual obligation to treat Plaintiff as the exclusive vendor and stating that Plaintiff was "not a contract engineering company," rather Plaintiff "is a contract manufacturing company that utilizes its engineering expertise and knowledge of the marketplace to facilitate its manufacturing business." *Id*. Plaintiff made it clear that it had expended considerable time and resources on designing custom chassis for Defendant and that Plaintiff was not offering those resources for free. *Id*.

On June 23, 2005, the parties met to discuss the dispute regarding Plaintiff's exclusive vendor status, and Defendant confirmed that the original agreement for exclusivity was still in force, but that as a formality, Defendant had to put the preliminary redesign out for competitive bidding. Plaintiff would then have the opportunity to submit a second bid if the competitive information indicated Plaintiff's bid was too high. Defendant again confirmed that after acceptance of Plaintiff's bid, Plaintiff would be the exclusive vendor of the chassis for the life of the 1,600 CFM product. PL. 1ST AMD. COMPL. at ¶ 16. On August 1, 2005, Defendant awarded Plaintiff the 1,600 CFM project.

PL. 1ST AMD. COMPL. at ¶ 17.

Plaintiff and Defendant fine-tuned the chassis design between August and December of 2005 PL. 1ST AMD. COMPL. at ¶ 18. Beginning in February 2006, Defendant announced it needed to delay production of the chassis design, first to May 2006, then to September 2006, then to November 2006. PL. 1ST AMD. COMPL. at ¶ 20. In August 2006, and in anticipation of beginning production, Defendant traveled to Plaintiff's manufacturing facility in Mexico. During this trip, Defendant announced it needed to delay manufacturing to January 2007 and that it would need substantially fewer units. PL. 1ST AMD. COMPL. at ¶ 21. Defendant delayed production several more times to June 2008. Through 2006 and most of 2007, Defendant treated Plaintiff as the exclusive vendor of the chassis, but delayed production. PL. 1ST AMD. COMPL. at ¶ 21-22.

In September or October 2007, Defendant canceled production and told Plaintiff it sent the open frame skid configuration for competitive bidding. On information and belief, Defendant shared Plaintiff's drawings and other confidential and proprietary information with third-party suppliers. PL. 1ST AMD. COMPL. at ¶ 23-24. Defendant retained Plaintiff's design materials which would allow Defendant to complete or redesign the chassis with less effort and expense than if it did not have Plaintiff's work product. PL. 1ST AMD. COMPL. at ¶ 25. Plaintiff devoted over three years and over $900,000 to redesigning Defendant's chassis. PL. 1ST AMD. COMPL. at ¶ 25-26. Only as the exclusive vendor of the custom chassis it designed to Defendant's specifications would Plaintiff be compensated for its time, labor and money. *Id*.

Plaintiff asserts that Defendant never paid for its design services and further deprived it of the profits it would have earned had Defendant lived up to its end of the bargain. PL. 1ST AMD. COMPL. at ¶ 26. Plaintiff asserts that Defendant never informed Plaintiff that it was accepting nearly

$1,000,000 in engineering and design services with no intention of fulfilling its obligation to make Plaintiff the exclusive vendor.

In its First Amended Complaint, Plaintiff asserts claims for breach of contract, breach of fiduciary duty, unjust enrichment and misappropriation of trade secrets. On November 5, 2008, Defendant filed its amended partial motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and Local Rule CV-7(a)(1) and 7(j).[3] On December 1, 2008, Plaintiff filed its response. On December 8, 2008, Defendant field its reply. On December 15, 2008, Plaintiff filed its sur-reply.

### LEGAL STANDARD

The Defendant filed a motion to dismiss for failure to state a claim pursuant to FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) provides that a party may move for dismissal of an action for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). The Court must accept as true all well-pleaded facts contained in the plaintiff's complaint and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In addition, all reasonable inferences are to be drawn in favor of the plaintiff's claims. *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). However, dismissal for failure to state a claim does not require the appearance that, beyond a doubt, the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1968 (2007). Rather, to survive a 12(b)(6) motion to dismiss, a plaintiff must show, after adequately stating his claim, that it "may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 1969.

---

[3] Local Rule CV-7(a)(1) and 7(j) are not relevant to the Court's disposition of Defendant's Rule 12(b)(6) motion.

Although a district court may not go outside the complaint, the Fifth Circuit has recognized one limited exception. *Scanlan v. Tex*as *A & M University*, 343 F.3d 533, 536 (5th Cir. 2003). A district court may consider documents attached to a motion to dismiss if the documents are referred to in the plaintiff's complaint and are central to the plaintiff's claims. *Id.*, citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

## DISCUSSION AND ANALYSIS

*FIRST AMENDED PARTIAL MOTION TO DISMISS*

Defendant asserts the following as grounds to support its amended partial motion to dismiss: (1) that Plaintiff's allegations of an exclusive agreement to sell goods to Defendant for the life of the product are not sufficient to show compliance with the statute of frauds when no agreement exists; (2) that Plaintiff has not alleged sufficient facts to support a claim for breach of fiduciary duty; (3) that Plaintiff's cause of action for misappropriation of trade secrets is barred by the three-year statute of limitations; and (4) that Plaintiff's cause of action for unjust enrichment is barred by the two-year statute of limitations. Defendant asserts generally that Plaintiff has failed to provide sufficient facts to support the claims for breach of contract and breach of fiduciary duty.

Defendant first asserts that Plaintiff's claim, that it would be the exclusive chassis supplier for the entire life of the 1,600 CFM product, is not supported by a written agreement. Defendant further asserts that without a written agreement, Plaintiff's contract claim failed to satisfy the requirements of the statute of frauds. Plaintiff responds that Defendant has not alleged that Plaintiff has failed to state a breach of contract claim, but instead asserts that as a matter of law, Defendant's statute of frauds affirmative defense bars the breach of contract claim. The Court agrees that Plaintiff is only required to plead a claim for breach of contract. There is not a heightened pleading

requirement that applies to a breach of contract claim. Plaintiff is under no obligation to plead against a possible affirmative defense or the possible exceptions to an affirmative defense.

Defendant also asserts that Plaintiff has not sufficiently alleged facts to support a claim for breach of fiduciary duty. In its reply, Defendant concedes that Plaintiff sets forth allegations to support a breach of fiduciary duty based on the written terms found in the NDA. However, Defendant asserts that Plaintiff has not alleged a breach of fiduciary duty claim based upon the relationship between the parties and/or the independent acceptance of the alleged confidential data. Plaintiff asserts that Defendant's fiduciary duty extends beyond the confines of the NDA because Defendant also owes a fiduciary duty to Plaintiff by virtue of Plaintiff holding Defendant in its trust and confidence by sharing proprietary design information developed at great expense to Plaintiff. A Rule 12(b)(6) motion is not the appropriate avenue for attacking Plaintiff's breach of fiduciary claims. Defendant's request to limit Plaintiff's breach of fiduciary claim should be denied at this time.

Defendant next asserts that Plaintiff's claim for misappropriation of trade secrets is barred by the three-year statute of limitations. Defendant asserts that Plaintiff knew no later than May 6, 2005, that Defendant did not intend to give its manufacturing business to Plaintiff and that its design information either had been given to other manufacturers in order for Defendant to get a competitive quote on its production or that Defendant was contemplating doing so. Defendant asserts that Plaintiff knew or should have known no later than May 2005 of its claim for misappropriation of trade secrets. Because Plaintiff did not file its complaint until June 5, 2008, Defendant argues that Plaintiff's misappropriation of trade secrets cause of action is time-barred.

Plaintiff asserts that its claim accrues when it knew or should have known of the Defendant's

first wrongful use of the trade secret, citing *Computer Associ. Intl v. Atlai.*, 918 S.W.2d 452, 461 (Tex. 1996). Plaintiff asserts that the first wrongful use of trade secrets was when Defendant announced it was canceling production of the custom chassis and sent the designs out for competitive bids in 2007. *See* PL. 1ST AMD. COMPL at ¶ 23. Plaintiff asserts that it filed the claim fewer than three years from the first wrongful use.

Plaintiff refutes Defendant's claim that the statute of limitations began when Plaintiff learned in early May 2005 that Defendant planned to send out Plaintiff's designs to other manufacturers for competitive bids. Plaintiff asserts that Defendant assured Plaintiff that the competitive bid process in no way exposed Plaintiff's trade secrets. Plaintiff further asserts that Defendant is estopped from relying on the statute of limitations because Defendant signed the NDA which was designed to protect Plaintiff's trade secrets.

A cause of action accrues when a wrongful act causes some legal injury, even if the fact of the injury is not discovered until later. *Seatrax, Inc. v. Sonbeck Intern., Inc.*, 200 F.3d 358, 365 (5th Cir. 2000)(citation omitted). A claim for misappropriation of trade secrets accrues when the trade secret is actually used. *Id.* (citation omitted). A misappropriation of trade secrets that continues over time is a single cause of action and limitations begin to run without regard to whether the misappropriation is a single or continuing act. Tex. Civ. Prac. & Rem. Code § 16.010(b). However, the discovery rule exception applies to this type of claim. Tex. Civ. Prac. & Rem. Code § 16.010(a). Thus, accrual of the cause of action is deferred until Plaintiff knew, or exercising reasonable diligence should have known, of the facts giving rise to a cause of action. *Seatrax*, 200 F.3d at 365 (citation omitted).

Plaintiff asserts that the first alleged wrongful use or disclosure did not occur until September

or October of 2007 when Defendant sent the open frame skid configuration out for competitive bidding after it informed Plaintiff that it would no longer be the exclusive vendor. *See* Pl. 1st Amd. Compl. at ¶ 23. Defendant's position is that sending out the competitive bid packages in 2005 should trigger the running of the statute. Plaintiff responds that there is no allegation that Defendant wrongfully used or disclosed the trade secrets that are the subject of the case in the 2005 bidding process. The Court agrees. After reviewing Plaintiff's first amended complaint, the Court cannot grant a Rule 12(b)(6) motion based upon limitations. The Court finds that Defendant's claim that Plaintiff's misappropriation claim should be dismissed based upon limitations should be denied.

Finally, Defendant moves to dismiss Plaintiff's unjust enrichment claim as being barred by limitations. Unjust enrichment is governed by a two-year statute of limitations. *Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869 (Tex. 2007); Tex. Civ. Prac. & Rem. Code § 16.003(a); *Mayo v. Hartford Life Ins.*, 354 F.3d 400, 410 (5th Cir. 2004). Defendant asserts that Plaintiff knew in May 2005 that Defendant intended to use other manufacturers, and at the latest knew in July 2005 that the competitive bidding process was taking place. Plaintiff asserts that the earliest Defendant could have been unjustly enriched is when it used Plaintiff's design materials to produce chassis through another vendor thereby avoiding paying Plaintiff for the design work. Based upon a review of the first amended complaint, the Court cannot determine when the alleged unjust enrichment took place. Thus, the Court cannot grant Defendant's Rule 12(b)(6) motion.

Accepting as true all the well-pleaded facts contained in the Plaintiff's first amended complaint and viewing them in the light most favorable to the Plaintiff, the Court is of the opinion that the Plaintiff's claims may be supported by some set of facts consistent with the allegations stated in the complaint. Absent a claim which is obviously insufficient, the Court should not grant a Rule

12(b)(6) motion to dismiss, thereby denying Plaintiff an opportunity to develop facts to support its complaint. Moreover, sufficient procedures are available to a defendant to seek summary disposition of a lawsuit after a plaintiff has been afforded some opportunity to develop facts to support his complaint. *See Reeves v. City of Jackson*, 532 F.2d 491, 494 (5th Cir. 1976). A review of Defendant's motion and the complaint demonstrates that Defendant has not met its burden with respect to a Rule 12(b)(6) motion. The proper avenue to address this claim is under Fed. R. Civ. P. 56. Accordingly, the Defendant's first amended partial motion to dismiss should be denied.

*SUPPLEMENTAL MOTION TO DISMISS*

In its second amended complaint, Plaintiff asserts the following additional claims: request for declaratory judgment of ownership of copyrights, trade secrets and other proprietary rights in the Defendant's design documents, drawings and other materials; and (2) application for preliminary and permanent injunction. On May 11, 2009, Defendant filed its supplemental motion to dismiss relating to new claims brought in the second amended complaint. On May 29, 2009, Plaintiff filed its response. On June 5, 2009, Defendant filed a reply. On June 9, 2009, Plaintiff filed a sur-reply.

Defendant moves to dismiss the new claims under Rule 12(b)(6) asserting generally that Plaintiff failed to allege sufficient facts to support requests for declaratory relief and injunctive relief. Defendant asserts that a declaratory judgment is an action to clarify existing rights and Plaintiff has not alleged that writings exist which the Court could review to ascertain what those rights are. Defendant further asserts that Plaintiff has not pleaded facts to support the elements required for obtaining injunctive relief. Plaintiff responds that it has an ownership right in a collaborative design effort which is disputed by Defendant, so Plaintiff seeks declaratory relief to resolve the dispute and

injunctive relief to protect its ownership rights.

Accepting Plaintiff's allegations as true for purposes of this motion, the Court must assume that Plaintiff and Defendant collaborated to design the chassis at issue and that Plaintiff owns its contributions to the design as stated in the NDA. Plaintiff has sufficiently met the pleadings requirements to state a claim for declaratory and injunctive relief. Again, the proper avenue to address these claims is under Fed. R. Civ. P. 56. Accordingly, the Defendant's supplemental motion to dismiss should be denied.

## RECOMMENDATION

Defendant's Amended Partial Motion to Dismiss (Dkt. #20) and Defendant's Supplemental Motion to Dismiss (Dkt. # 58) should be DENIED.

Within ten (10) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 23rd day of June, 2009.**

_____
AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE